592 So.2d 947 (1991)
Charles Earl PIPKINS
v.
STATE of Mississippi.
No. 90-KA-0413.
Supreme Court of Mississippi.
December 18, 1991.
Albert S. Johnston, III, Henry P. Pate, III, Pascagoula, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the court:
Charles Pipkins was indicted and convicted for the possession of controlled substances in the Circuit Court of Jackson County. He was sentenced to a term of three (3) years in the custody of the Mississippi Department of Corrections. On appeal, Pipkins asserts that his pre-trial motion to suppress should have been granted in the court below. Alternatively, Pipkins contends that the magistrate was misled when issuing a search warrant for his home and, thus, the resulting search and seizure of contraband was illegal. Finding merit in appellant's alternative argument, we reverse his conviction and remand.

I.
On June 3, 1988, Jackson County Deputy Sheriff Ronald Cooley appeared before Justice Court Judge Louis Fondren seeking a search warrant for the residence of the appellant, Charles Pipkins. Deputy Cooley presented Judge Fondren with an "Affidavit For Search Warrant" and a statement of "Underlying Facts and Circumstances" that contained information received, for the most part, from a confidential informant. The statement of underlying facts provided that:
On June 3, 1988, Agent Ron Cooley, Jackson County Sheriff's Office, met with a confidential and reliable informant, who in the past has provided information to other law enforcement agencies that has proved reliable and has led to the arrest of numerous drug offenders. The confidential and reliable informant has also corroborated information about the person mentioned in section 2 of the affidavit for search warrant that agent Ron Cooley has gathered through other informants and surveillance in the past. The confidential and reliable informant stated to agent Cooley that a quantity of marijuana was going to be delivered to the address stated in section one of the affidavit for search warrant on this date. The confidential and reliable informant further stated to agent Cooley *948 that the person at the residence mentioned in section one of the affidavit for search warrant, would have weapons on him or close at hand. The confidential and reliable informant also stated to agent Cooley that a quantity of marijuana had been seen at the residence mentioned in section one of the affidavit for search warrant within the last 24 hrs. It is with the above information that agent Ron Cooley, Jackson County Sheriff's Office, asks that [sic] issuance of a search warrant.
A search warrant was issued by Judge Fondren and a search team was organized by the narcotics unit of the Jackson County Sheriff's Office. At approximately 9:00 p.m., deputies from the narcotics unit, aided by officers from the Gautier Police Department, executed the search warrant in hopes of finding a "quantity" of marijuana on the premises. After the search had proceeded for more than an hour, however, no marijuana had been located. Three (3) tablets of the controlled substance hydromorphine (Dilaudid) were found at the Pipkins residence. Upon recovery of the Dilaudid, Charles Pipkins and his fiancee, Rita Vice, were arrested and subsequently indicted for the possession of controlled substances. Shortly after their arrest, Charles Pipkins and Rita Vice were married. In August of 1989, the couple was tried together in the Circuit Court of Jackson County.
On August 25, 1989, the parties came before the circuit court to argue the defendants' motion to suppress. Defense counsel alleged that the magistrate did not have probable cause to issue the search warrant of June 3, 1988. After receiving the testimony of Deputy Ron Cooley, the lower court found that the Motion to Dismiss the Indictment and Motion to Suppress were not well taken and, thus, overruled.
At trial, Deputy Ron Cooley testified that he was a narcotics agent with the Jackson County Sheriff's Department and that he participated in the June 3, 1988 search of the Pipkins residence. Officer Cooley related his involvement in the search and seizure as follows:
[O]n June 3, 1988 I had received some information from a confidential informant that a quantity of marijuana was going to be delivered to the residence on Highway 63, and that within the last twenty-four hours there had been a quantity of marijuana seen at the house. I brought the facts to a Judge and asked for issuance of a search warrant. We executed the search warrant. In the home we found three  what appeared to be K-4 Dilaudids, yellow pills.
Deputy Cooley testified that the tablets were found on the floor near the opening made by the lower cabinet and the stove. He stated that the tablets appeared to be wrapped in the cellophane from a package of cigarettes.
On cross-examination, Officer Cooley was questioned concerning the information received from the confidential informant. Deputy Cooley testified that he had known the informant for only a few days or possibly had met him only on the day of the warrant's issuance when he was given the information about Charles Pipkins. Deputy Cooley related that the confidential informant told him that the marijuana would be brought to the house in a blue pickup truck. Officer Cooley informed the court that a pickup truck did arrive at the Pipkins home on the night of June 3, 1988. He stated, however, that the occupants of the vehicle were ultimately released after no evidence of illegal substances could be found. Deputy Cooley testified that no evidence of marijuana was found in the Pipkins residence. The search of the Pipkins' home lasted more than an hour and was conducted by at least five officers. The State offered in evidence three (3) Dilaudid tablets that Officer Cooley said he found on the floor of the kitchen. Pipkins denied that he had the tablets and did not know where they came from.
After the defense rested their case in chief, and upon motion to dismiss, the lower court dismissed the charges against Rita Pipkins. In due course, the jury returned a verdict of guilty against Charles Earl Pipkins and the trial judge imposed the maximum sentence of three (3) years in the *949 custody of the Mississippi Department of Corrections. This appeal followed.

II.
Charles Pipkins argues on appeal that the lower court was in error when it failed to rule, at the pre-trial motion to suppress, that the warrant issued for the search of his home was issued upon insufficient probable cause. Alternatively, Pipkins asserts that the issuing magistrate, Justice Court Judge Louis Fondren, was misled by the "Affidavit for Search Warrant" and statement of "Underlying Facts and Circumstances" presented by Deputy Ron Cooley in support of his application for search warrant. Finding merit in Pipkins' alternative argument, we are compelled to reverse and remand for further proceedings.
On August 25, 1989, the parties came before Circuit Court Judge Robert Mills concerning Charles Pipkins' pre-trial motion to suppress. At this suppression hearing, Deputy Ron Cooley was called to testify regarding the issuance of the search warrant for the home of the appellant. Officer Cooley defended his affidavit for search warrant by giving the following testimony:
Q. Okay. In your affidavit, you state that the informant was confidential and reliable to other law enforcement agencies.
A. Yes.
Q. Did you ever have any personal knowledge of this informant?
A. Yes, sir, I did.
... .
Q. In your affidavit for the search warrant, you mention that a quantity of marijuana had been seen at the residence twenty-four hours before.
A. Yes.
Q. Was that information you obtained from the confidential informant or not?
A. Yes.
Q. Will you please tell us how  was it the informant that saw it, or do you know, or was it hearsay from him?
A. I understood that the informant saw it at the scene.
... .
Q. You said it was your understanding. What did he tell you?
A. That there had been marijuana in that house within the last twenty-four hours.
... .
Q. Had you worked with this informant in the past?
A. No sir, not prior to this date. Earlier in the day I had.
Charles Pipkins contends that the evasive testimony of Deputy Ron Cooley was insufficient to support the lower court's finding of probable cause. Pipkins asserts, therefore, that the trial court should have granted his pre-trial motion to suppress regarding the fruits of the illegal search of his home. We disagree.
This Court has often stated that the job of the reviewing court is to insure that the issuing magistrate had a substantial basis for concluding that probable cause existed. Harper v. State, 485 So.2d 1064, 1066 (Miss. 1986). Under the facts of the case sub judice, we are unable to say that the trial court was in error when it ruled that the issuing magistrate, Judge Louis Fondren, had a substantial basis for granting the search warrant. The probable cause pattern designed by precedent of this Court was followed when Deputy Cooley applied for the search warrant supported by the statement of "Underlying Facts and Circumstances." The form was completed, the warrant issued and the pattern matched. The justice court judge had probable cause before him and Deputy Cooley's probable cause presentation was supported in both form and content. The issuance of the search warrant is not the problem that concerns this Court.
Pipkins' alternative argument, that the issuing magistrate was misled, presents a more troubling point of law under the facts of today's case. During the suppression hearing and the trial testimony of Deputy Ron Cooley, it was revealed that Officer Cooley had a very brief history with the confidential informant at issue. The testimony calling the informant's reliability into question provided as follows:

*950 Q. Well, now then, in checking on these confidential informants, had you known this one very long?
A. Not a long period.
Q. Well, how long? Would you figure that you've known this confidential informant, say, hours, or days, or months, or years?
... .
A. I believe days from when this happened.
Q. As a matter of fact, you'd known them that day hadn't you?
A. Oh, I knew them that day.
Q. And that's when you met them was that day too.
A. I'm not positive. It seems that I had actually met this particular informant a couple of days prior, but I cannot testify that I did. It might have been that day. It's been a year and a half.
... .
Q. So, you know very little about the credibility or reliability of this confidential informant; is that not correct.
A. I would say that I felt very confident of what the confidential informant was telling me. And that was, in fact  was telling me the truth.
At the suppression hearing, in response to the assistant district attorney's questions, Officer Cooley had testified as follows:
Q. Had you worked with this informant in the past?
A. No, sir, not prior to this date. Earlier in the day I had.
Q. Okay. So, "in the past," what do you  would you define exactly what do you mean by that sentence here?
A. I had, through intelligence, surveillance, prior knowledge, other informants, had already been informed that, and gathered intelligence, showing that Mr. Pipkins was possibly involved in illegal drug transactions. And  (emphasis added).
... .
Q. So you had had information in the past; is that correct?
A. Yes, sir
Q. And on this date, where it says "in the past," you are talking about that day?
... .
Q. When you say "in the past," did you inform Judge Fondren that "in the past" meant that day?
A. No, sir. What I told Judge Fondren is  in fact, I did not discuss with Judge Fondren anything about past or present. He read this. And the only thing that I recall mentioning to Judge Fondren at all was, I mentioned to him about the vehicle I stated earlier.
Deputy Cooley's testimony on cross-examination, combined with his evasive suppression hearing testimony, leads to the conclusion that Deputy Ron Cooley was less than candid with the issuing judge when he applied for the search warrant in question. We learn at trial that the statement of "Underlying Facts and Circumstances" while being correct as to required form is lacking of a foundation to support the form. The statement consists of "pattern words" without the whole-cloth of detail and certainty. The trial testimony serves only to undermine the credibility of the completed application. We learn that Deputy Cooley became acquainted with the confidential informant possibly on the day of the search and seizure. We are further informed that Deputy Cooley had not relied upon the informant in the past and that this confidential person may not have actually seen a "quantity of marijuana" at the Pipkins' home. We note that at the suppression hearing, Cooley was evasive when asked to relate the informant's basis of knowledge.
Q. In your affidavit for the search warrant, you mention that a quantity of marijuana had been seen at the residence twenty-four hours before.
A. Yes.
Q. Was that information you obtained from the confidential informant or not?
A. Yes.
Q. Will you please tell us how  was it the informant that saw it, or do you know, or was it hearsay from him?

*951 A. I understand that the informant saw it at the scene. (emphasis added)
These representations leave the court with open ended affidavits and prevented the issuing magistrate from properly using the "totality of the circumstances" test when analyzing the warrant application. See Carney v. State, 525 So.2d 776 (Miss. 1988). Cooley's statements never quite close as to the point of the questions. The question we face now is the effect of Deputy Cooley's misleading statements.
In Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the U.S. Supreme Court reviewed the question of whether a criminal defendant has the right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual statements made in an affidavit for search warrant. In finding that the Constitution allows such a challenge, the high Court stated as follows:
[W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if the probable cause was lacking on the face of the affidavit.
Franks, 438 U.S. at 155-56, 98 S.Ct. at 2676.
This Court has adopted the ruling in Franks v. Delaware, in the recent decision of Bevill v. State, 556 So.2d 699 (Miss. 1990). There we stated that:
[A] defendant may challenge an ex parte issuance of a search warrant on the truthfulness of the statements contained in the affidavit if the defendant makes a preliminary showing that the statements were knowingly or intentionally false, or made in reckless disregard of the truth. 438 U.S. at 171, 98 S.Ct. at 2684. If the defendant accomplishes this, then he is entitled to a hearing to determine if there was probable cause for the issuance of the search warrant, and if the alleged false statement was necessary for finding probable cause, the search must be voided and the fruits excluded. Id. at 171-172, 98 S.Ct. at 2684-85.
Bevill, 556 So.2d at 712.
As mandated by Franks v. Delaware and Bevill v. State, we have reviewed the "Affidavit for Search Warrant" and the statement of "Underlying Facts and Circumstances" in light of Cooley's testimony at both the suppression hearing and at trial and find that probable cause did not exist, under the "totality of the circumstances," for the search of Pipkins' home. Close scrutiny of Cooley's testimony leaves us with "reliable information" that had never been relied upon before. We are left with the personal surveillance of the appellant's residence and the claim of corroboration contained in Deputy Cooley's statement of "Underlying Facts and Circumstances." The justice court judge properly relied on the statement of "Underlying Facts and Circumstances" and it was only when tested by examination of Cooley that we find that his personal surveillance produced no suggestion of criminal activity. That corroboration was of nothing of a criminal nature and could have been as innocent as corroborating that the defendant lived in the house searched. In fact the testimony did establish that Cooley watched the premises off-and-on for three months without noting any criminal act or activity. Cooley testified that during the three months surveillance, he saw narcotics violators enter and leave Pipkins' home. Since Pipkins admittedly had been convicted upon a marijuana charge, Pipkins could have been the alleged violator. This failure of probable cause compels a finding that the contraband discovered during the search of appellant's home should be suppressed. To hold *952 otherwise would prevent an objective determination of probable cause, under the "totality of the circumstances," by a neutral and detached magistrate. This cause is reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.