7 So.3d 932 (2008)
Jimmie ROACH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00237-COA.
Court of Appeals of Mississippi.
August 21, 2007.
Rehearing Denied August 26, 2008.
*933 Julie Ann Epps, Canton, for appellant.
Office of the Attorney General by W. Glenn Watts, for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Jimmie Roach was convicted by a jury of possession of cocaine and possession of hydromorphone and was sentenced by the Hinds County Circuit Court to forty-eight years for the cocaine possession and sixty years for the hydromorphone possession, both as a habitual offender, with the sentences to run consecutively in the custody of the Mississippi Department of Corrections. Aggrieved, Roach appeals and submits the following contentions of error: (1) that the court erred in denying his motion to suppress the search warrant and its fruits, (2) that the court erred in refusing to order the State to reveal the identity of its confidential informant, (3) that the court erred in failing to grant a mistrial after a defense witness was arrested after testifying, (4) that the court erred in refusing to grant Petrice Roach's motion for a directed verdict, (5) that the evidence is insufficient to sustain his conviction, and (6) that his sentence violates the Eighth Amendment. We find merit in Roach's contention that the court erred in denying his motion to suppress, and we therefore reverse and remand for a new trial.

FACTS
¶ 2. On January 22, 2003, Officer Richard Spooner, an investigator with the Hinds County Sheriff's Department, was contacted by Officer Shannon Bullock, who was also an investigator with the department. Officer Bullock told Officer Spooner that a confidential informant (CI) had indicated that he had seen contraband at Roach's residence. Officer Spooner, Officer Bullock, and the CI met, and the CI made a controlled purchase of crack cocaine from Roach at Roach's residence. Officer Spooner testified that field tests of the purchased substance confirmed that it was crack cocaine.
¶ 3. The next day, Officer Spooner presented an affidavit to Judge Mike Parker in order to obtain a search warrant for Roach's residence. The controlled buy was not mentioned in the affidavit, but Officer Spooner indicated that he knew the CI and that the CI had provided him with "information in the past." Officer Spooner's affidavit further averred that the information provided in the past had "proven to be true and correct regarding the trafficking of illicit narcotics." Officer Spooner swore in the affidavit that the CI was known by him "to be a truthful, credible, and a reliable source of information." There is no indication that any information other than the affidavit was given to Judge Parker. A search warrant was subsequently *934 issued for Roach's residence and was executed the same day, January 23.
¶ 4. Five people were detained and questioned as a result of the search, including Roach and his wife, Petrice Roach. The house was searched, and cocaine and hydromorphone were found inside. A large amount of the drugs was found in front of the refrigerator in the kitchen, and Officer Spooner testified that Roach was standing within arm's reach of the drugs when the officers entered the room. The other individuals detained were all found outside the house. All the individuals denied any knowledge of the illegal drugs.
¶ 5. At trial, John Henry Clark Jr. testified that he was also present at the house immediately prior to the execution of the search warrant. Clark testified that he ran out of the back door of the house when he saw the officers because he had hydromorphone and cocaine on his person. Officers testified that no one was observed running from the house. Furthermore, Clark admitted during cross-examination that he suffers from severe health problems and has trouble walking. Clark also admitted that he has falsely taken responsibility for illegal drugs before. After his testimony, the court ordered that Clark be arrested.
¶ 6. Petrice and Roach were tried together. At the close of all the evidence, the court directed a verdict in favor of Petrice due to the fact that insufficient evidence had been presented to indicate her possession of the drugs. Thereafter, Roach was convicted by the jury and sentenced by the court to a total of 108 years for the two counts.
¶ 7. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Suppression of Search Warrant
¶ 8. A search warrant is improperly issued, and reversal is required, when there is "an absence of substantial credible evidence to support" its issuance. Culp v. State, 933 So.2d 264, 271(¶ 10) (Miss.2006) (citing Magee v. State, 542 So.2d 228, 231 (Miss.1989)). The issuing court must have had a "substantial basis for concluding that probable cause existed." Id. (citing Petti v. State, 666 So.2d 754, 757 (Miss.1995)). Probable cause exists when "a man of average caution [would believe] that a crime has been committed and that a particular individual committed it." State v. Woods, 866 So.2d 422, 426(¶ 11) (Miss.2003) (quoting Strode v. State, 231 So.2d 779, 782 (Miss.1970)). "The task of the issuing magistrate is simply to make a practical, common-sense decision based on all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information." Id. at 425(¶ 10) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
¶ 9. When a CI is used to obtain a search warrant, the informant's observations must be shown to be "truthful or reliable." Id. at 426(¶ 14). As noted by the Woods court, corroboration of a CI's information "usually ... consists of a statement that the officer had successfully used the CI in the past ... or that the suspect had a prior criminal record relating to the current investigation ... or that an undercover agent had seen the suspect engaging in behavior consistent with the current investigation...." Id. (citations omitted). If an affidavit does not contain any corroborating evidence of a CI's truthfulness and reliability, probable cause does not exist for the issuance of a search warrant. Id. at 426-27(¶ 14). In Woods, *935 probable cause was found lacking where the issuing magistrate testified that he found probable cause solely because the CI personally observed the contraband and because the address and vehicle descriptions given by the informant were accurate. Id. at 427 (¶¶ 15-16).
¶ 10. The underlying facts and circumstances attached to the affidavit used to obtain a warrant in this case read:
On the morning of Thursday, January 23, 2003, I, Investigator R.W. Spooner, received information from a Confidential Informant that cocaine was being stored and sold from a residence located at 217 Foxboro Drive, Jackson, Mississippi. This Confidential Informant has observed cocaine being stored and distributed from this location within the last twenty-four hours and has identified the owner of this residence to be a black male known only to the Confidential Informant as "Jimmy Roach."
This Confidential Informant, having furnished me with information in the past that has proven to be true and correct regarding the trafficking of illicit narcotics, is known by me to be a truthful, credible, and a reliable source of information.
Based upon these underlying facts and circumstances, I, Investigator R.W. Spooner, request that a search warrant be issued for the search of the residence located at 217 Foxboro Drive in the First Judicial District of Hinds County, Jackson, Mississippi, for the search and seizure of cocaine, paraphernalia related to the trafficking of cocaine, and any monetary instruments derived from the trafficking of cocaine. This search to include any outbuildings, vehicles located on the property, and any safe or locked containers found on the premises.
¶ 11. In the interest of thoroughness, we quote liberally from the record regarding Officer Spooner's testimony during the suppression hearing:
[PROSECUTOR]: Would you tell the Court briefly on January 22nd, 2003, did you receive a phone call from a confidential informant?
[OFFICER SPOONER]: No, I did not. I was contacted by Investigator Shannon Bullock.
[PROSECUTOR]: What did Investigator Bullock tell you?
[OFFICER SPOONER]: Investigator Bullock requested assistance from me in an operation where a confidential informant would make an undercover purchase.
* * * *
[Officer Spooner described the details of the controlled buy].
[PROSECUTOR]: All right. And had this confidential informant been used before?
[OFFICER SPOONER]: I believe so.
[PROSECUTOR]: And he had been proven reliable?
[OFFICER SPOONER]: Yes.
* * * *
[DEFENSE ATTORNEY]: Okay. Well, the fact that a sale had taken place would be a pretty important fact to relate to the Judge that is going to issue the warrant; would it not?
[OFFICER SPOONER]: That's correct.
* * * *
[DEFENSE ATTORNEY]: Officer, is there a reason you didn't put in the affidavit that the sale had taken place and that the confidential informant had actually made a purchase of an illegal substance at the location?

*936 [OFFICER SPOONER]: Could you repeat the first part of your question. I didn't understand you.
[DEFENSE ATTORNEY]: Is there a reason you didn't include this sale as a portion of your factual basis for this affidavit and search warrant?
[OFFICER SPOONER]: Yes.
[DEFENSE ATTORNEY]: Why?
[OFFICER SPOONER]: For protection of the CI.
[DEFENSE ATTORNEY]: Well, you listed the fact that there was a confidential informant; did you not?
[OFFICER SPOONER]: That's correct.
[DEFENSE ATTORNEY]: Okay. Would you explain yourself for me, please?
[OFFICER SPOONER]: Well, the CI observed cocaine being distributed and stored. I didn't want to put in there that the CI had actually made a purchase because if that was the only purchase that was made from Jimmie Roach that day he would automatically know who the CI was.
* * * *
[DEFENSE ATTORNEY]: Okay. Now have you personally worked with this confidential informant previously?
[OFFICER SPOONER]: No.
[DEFENSE ATTORNEY]: You had never worked with this confidential informant?
[OFFICER SPOONER]: No.
[DEFENSE ATTORNEY]: The search warrant ... refers to an underlying facts and circumstances sheet.... Do you recall whether or not an underlying facts and circumstances sheet was prepared to be attached to that affidavit?
[OFFICER SPOONER]: Yes.
[DEFENSE ATTORNEY]: It was?
[OFFICER SPOONER]: Yes, sir.
* * * *
[DEFENSE ATTORNEY]: And this underlying facts and circumstances sheet, which is Exhibit 2, was signed by you; is it not?
[OFFICER SPOONER]: That's correct.
[DEFENSE ATTORNEY]: And the affidavit was signed by you; correct?
[OFFICER SPOONER]: That's correct.
[DEFENSE ATTORNEY]: Wasn't signed by Officer Bullock, neither one of them were; were they?
[OFFICER SPOONER]: No.
[DEFENSE ATTORNEY]: Okay. So when you make affidavit and you represent to Judge Parker, who issued the search warrant, that this confidential informant has furnished you with information in the past that has proven to be true and correct. That's not true; is it?
[OFFICER SPOONER]: Yes, it is.
[DEFENSE ATTORNEY]: Well, did you not just testify that you had never worked with this confidential informant before?
[OFFICER SPOONER]: Yes, I did.
[DEFENSE ATTORNEY]: Yet, you are telling me that this statement in the underlying facts and circumstances sheet that he or she has furnished you with information in the past that has proven to be true and correct, that's a correct statement?
[OFFICER SPOONER]: Yes. He has provided me with information. I haven't officially worked with him.
[DEFENSE ATTORNEY]: Well, now you are saying you haven't officially worked with him. When have you worked with this confidential informant?

*937 [OFFICER SPOONER]: I have spoken with this confidential informant on several occasions. He has worked with other officers in my unit.
[DEFENSE ATTORNEY]: Is this prior to January 22nd of 2003?
[OFFICER SPOONER]: Yes, it is.
[DEFENSE ATTORNEY]: All right. And how many cases? And if you could tell us, which cases?
[OFFICER SPOONER]: I don't know right offhand because they weren't mine.
[DEFENSE ATTORNEY]: Uh-huh. And what other officers has this confidential informant worked with?
[OFFICER SPOONER]: Investigator Bullock.
[DEFENSE ATTORNEY]: On the same cases you worked with?
[OFFICER SPOONER]: Would you rephrase that question.
[DEFENSE ATTORNEY]: Let me rephrase my question. Prior to January 22 of 2003, it is now your testimony that you worked with this confidential informant prior to January 22nd, 2003. Is that correct?
[OFFICER SPOONER]: If you mean work with, he provided me with information. Yes.
[DEFENSE ATTORNEY]: Okay. I am asking you because your previous testimony was that you had never worked on any cases with him before. I am now asking you to tell me what other officers worked with you and this confidential informant prior to January 22, 2003?
[OFFICER SPOONER]: No other officers.
[DEFENSE ATTORNEY]: Okay. So no other officers can substantiate what you have just told me?
[OFFICER SPOONER]: That he has provided me with information?
[DEFENSE ATTORNEY]: That's correct.
[OFFICER SPOONER]: No.
[DEFENSE ATTORNEY]: All right. Can you tell me what cases this confidential informant provided you information on prior to January 22 of 2003?
[OFFICER SPOONER]: No, I cannot.
[DEFENSE ATTORNEY]: Can you provide me any witnesses as we sit here today who can corroborate what you have just said, that you worked with this confidential informant prior to January 22 of 2003?
[OFFICER SPOONER]: No.
[DEFENSE ATTORNEY]: Other than the confidential informant?
[OFFICER SPOONER]: That's correct.
[DEFENSE ATTORNEY]: I see. How many times have you paid this confidential informant money prior to January 22 or 23, 2003?
[OFFICER SPOONER]: I have never paid him money.
[DEFENSE ATTORNEY]: Well, I am a little bit concerned because in your direct testimony you identified this person as a confidential informant of Officer Bullock. In my initial cross-examination you stated under oath that you had never worked on any cases with this confidential informant before, and now you are representing to the Court that you have but you can produce nobody and can cite no cases that you have.... Is that my understanding of your testimony today?
[OFFICER SPOONER]: Yes, but I think there is a misunderstanding between him providing me with information and actually working a case with the informant.

*938 * * * *
[DEFENSE ATTORNEY]: I want you to explain the difference if you didn't understand the questions put to you by the prosecutor and by me in my cross-examination.
[OFFICER SPOONER]: Like if I talk with the informant, he provides me with information: Subjects, locations, substances, any information he has on anything but there was never an official arrest or case made but I know that the information to be [sic] true and correct.
[DEFENSE ATTORNEY]: Well, if the arrest was never made and it was never followed up how would you know it was true and correct?
[OFFICER SPOONER]: From prior cases, other arrests from other officers.
* * * *
[PROSECUTOR]: Now you said earlier that other-that the confidential informant had been used before and had provided reliable information; is that correct?
[OFFICER SPOONER]: That's correct.
[PROSECUTOR]: Okay. Did he provide reliable information to other officers that you were aware of?
[OFFICER SPOONER]: Yes.
[PROSECUTOR]: Okay. Was Shannon Bullock one of those officers?
[OFFICER SPOONER]: Yes, he was.
[PROSECUTOR]: Okay. And, in fact, hadn't he told you he had purchased cocaine from 217 Foxboro Drive?
[OFFICER SPOONER]: Yes.
[PROSECUTOR]: And he, in fact, was searched in your presence?
[OFFICER SPOONER]: Yes.
[PROSECUTOR]: And then he  there were no illegal substances found?
[OFFICER SPOONER]: No.
[PROSECUTOR]: Is that correct?
[OFFICER SPOONER]: That's correct.
[PROSECUTOR]: And then he went over there he, in fact, purchased cocaine at 217 Foxboro Drive?
[OFFICER SPOONER]: Yes.
[PROSECUTOR]: So did you consider that to be reliable information?
[OFFICER SPOONER]: Yes, I do.
¶ 12. Officer Bullock also testified at the suppression hearing:
[DEFENSE ATTORNEY]: The confidential informant that was used was somebody that you had worked with before. Is that right?
[OFFICER BULLOCK]: Yes, sir.
[DEFENSE ATTORNEY]: And did that confidential informant-just tell me how he happened to bring to you information about drugs being seen at the residence of Jimmie Bullock [sic]?
[OFFICER BULLOCK]: He had called me on the phone.
[DEFENSE ATTORNEY]: Okay. And what did he say?
[OFFICER BULLOCK]: He told me he knew where cocaine was being sold and stored from.
* * * *
[DEFENSE ATTORNEY]: And that's a person you had used in the past?
[OFFICER BULLOCK]: Yes, sir.
* * * *
[DEFENSE ATTORNEY]: All right. Going back to this confidential informant, after the confidential informant contacted you, that's when you contacted Officer Spooner; isn't that correct?

*939 [OFFICER BULLOCK]: Right.
[DEFENSE ATTORNEY]: And Officer Spooner had never worked with this confidential informant before; had he?
[OFFICER BULLOCK]: Not to my knowledge.
[DEFENSE ATTORNEY]: I mean, this was your guy on the street; wasn't he?
[OFFICER BULLOCK]: Right.
[DEFENSE ATTORNEY]: And did it appear to you that Officer Spooner and this confidential informant knew one another?
[OFFICER BULLOCK]: No, it did not.
* * * *
[PROSECUTOR]: Okay. Can you tell us how many times he has provided you reliable information before January 23rd, 2003?
[OFFICER BULLOCK]: Once before.
[PROSECUTOR]: Once before?
[OFFICER BULLOCK]: Right.
¶ 13. When false information is given in an affidavit for a search warrant, we set the false material from the affidavit aside and determine "whether the affidavit's remaining content, together with sworn oral testimony presented to the issuing magistrate, is sufficient to establish probable cause." Petti, 666 So.2d at 758. Since there was no oral testimony presented to the issuing magistrate in this case, probable cause will have to be found solely from the contents of the affidavit. To that end, we review the affidavit for false material.
¶ 14. We note at the outset that Officer Spooner's testimony made it clear that the date given in the affidavit was incorrect, as the officers were contacted by the CI on the morning of January 22, 2003. The first sentence of the affidavit also contains a discrepancy inasmuch as Officer Bullock received the information from the CI, rather than Officer Spooner. However, since Officer Spooner later spoke to the CI himself, this discrepancy is immaterial.
¶ 15. It is the second paragraph of Officer Spooner's affidavit that is particularly troubling. In that paragraph, Officer Spooner states that the CI in question had furnished him "with information in the past that has proven to be true and correct regarding the trafficking of illicit narcotics...." However, Officer Spooner's testimony during the suppression hearing indicates that the CI had never provided him with information prior to January 22, 2003. Although Officer Spooner waffled and attempted to rectify the situation by asserting that the CI had provided him with credible information in the past that had not actually led to arrests, Officer Bullock's testimony clarified that it was apparent when Officer Spooner and the CI met on January 22, 2003, that the two had never met before. Officer Bullock also testified that, to his knowledge, Officer Spooner had never worked with the CI prior to January 22, 2003.
¶ 16. There are two interpretations of the statement in the affidavit that the CI had furnished Officer Spooner with information in the past: (1) that Officer Spooner had a working relationship with the CI, who had given him reliable information that had been verified in the course of past cases; or (2) that Officer Spooner was referring only to the January 22 controlled buy when he stated that the CI had given him reliable information in the past. Of these two interpretations, we find that the issuing judge was far more likely to assume the first from Officer Spooner's averment in the affidavit. This Court is also of the opinion that that is most likely what Officer Spooner intended for the judge to believe. Similar language has been used in numerous probable cause affidavits that have formed the basis for search warrants *940 in this state. However, we have been unable to find a case where similar language was used in reference to only one experience with the CI in question. See Evans v. City of Aberdeen, 926 So.2d 181, 187(¶ 20) (Miss.2006) (city's CI had provided "true and valuable information in the past which led to the arrest of drug dealers") (emphasis added); Harper v. State, 485 So.2d 1064, 1065 (Miss.1986) (search warrant issued based on CI "who had given information in the past that had led to confiscation of drugs in the past and misdemeanor convictions") (emphasis added); Garvis v. State, 483 So.2d 312, 315 (Miss. 1986) (affidavit sufficient where it alleged that the CI had "given information in the past that has led to the arrest and conviction of drug violators in Laurel and Jones County," despite the fact the affidavit did not give specific details of the past reliable information. There was no indication that the information was false); McKinney v. State, 724 So.2d 928, 933(¶ 17) (Miss.Ct. App.1998) (probable cause found where affidavit stated that CI had "given ... information in the past [that] was proven true and correct and led to previous arrests") (emphasis added).
¶ 17. Even if Officer Spooner had intended to reference the January 22 buy when he stated that he had a past relationship with the CI, in the absence of any mention of the buy in the affidavit for the search warrant, it was impossible for Judge Parker to take the buy into the consideration of the totality of the circumstances in issuing the warrant. The dissent contends that this single buy was sufficient to make Officer Spooner's affidavit truthful. However, as we have discussed, this buy was never mentioned to the issuing magistrate, either in Officer Spooner's affidavit or in person when Officer Spooner requested the search warrant.
¶ 18. We find the case of Pipkins v. State, 592 So.2d 947 (Miss.1991) to be somewhat analogous to the situation currently before us. In Pipkins, the officer who made out the affidavit for the search warrant testified that, although he had put in the affidavit that he had worked with his CI "in the past," in reality, he had only worked with the CI on the day he received the incriminating evidence from him. Id. at 950. The officer did, however, claim that he had corroborated the CI's claims through surveillance. Id. The court noted that the officer's implication that he had worked with the CI previously and knew him to be reliable, when in fact the officer had possibly only met the CI once, prevented the issuing magistrate from fully utilizing the totality of the circumstances in determining whether probable cause existed for the issuance of the search warrant:
Deputy Cooley's testimony on cross-examination, combined with his evasive suppression hearing testimony, leads to the conclusion that Deputy Ron Cooley was less than candid with the issuing judge when he applied for the search warrant in question. We learn at trial that the statement of "Underlying Facts and Circumstances" while being correct as to required form is lacking of a foundation to support the form. The statement consists of "pattern words" without the whole-cloth of detail and certainty. The trial testimony serves only to undermine the credibility of the completed application. We learn that Deputy Cooley became acquainted with the confidential informant possibly on the day of the search and seizure. We are further informed that Deputy Cooley had not relied upon the informant in the past and that this confidential person may not have actually seen a "quantity of marijuana" at the Pipkins' home. We note that at the suppression *941 hearing, Cooley was evasive when asked to relate the informant's basis of knowledge.
* * * *
These representations leave the court with open ended affidavits and prevented the issuing magistrate from properly using the "totality of the circumstances" test when analyzing the warrant application.
* * * *
As mandated by Franks v. Delaware [438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)] and Bevill v. State, [556 So.2d 699 (Miss.1990)] we have reviewed the "Affidavit for Search Warrant" and the statement of "Underlying Facts and Circumstances" in light of Cooley's testimony at both the suppression hearing and at trial and find that probable cause did not exist, under the "totality of the circumstances," for the search of Pipkins' home. Close scrutiny of Cooley's testimony leaves us with "reliable information" that had never been relied upon before.
Id. at 950-51.
¶ 19. Admittedly, the facts in Pipkins are somewhat different from the facts before us, as the officer in Pipkins conducted a three-month surveillance that yielded no "suggestion of criminal activity" before obtaining a search warrant. Id. at 951. However, Officer Spooner's testimony makes it clear that the informant whose information was relied upon had never been used by him prior to January 22, 2003. Furthermore, Officer Bullock testified that the informant had only been used by him once prior to the controlled buy in this case. As in Pipkins, Officer Spooner's testimony had the effect of preventing the issuing magistrate from utilizing the totality of the circumstances in issuing the search warrant here. The dissent contends that Pipkins is distinguishable from this case because the informant in this case "corroborated his information, by performing a controlled buy under the supervision of the officers with Roach...." While this fact does set Pipkins apart from our case to some degree, the essential holding of Pipkinsthat an officer's untruthful statements can cause the magistrate issuing a search warrant to be unable to determine probable cause-is still highly relevant to the case before us.
¶ 20. We note that there might be a substantial basis for probable cause had Officer Spooner related everything to Judge Parker, namely: (1) that another officer had worked with the informant once prior to the date in question, and (2) that the informant's information had been corroborated by a controlled buy carried out by that same CI. However, none of this information was related. Under these circumstances, we find that probable cause did not exist for the issuance of the search warrant, and the fruits of the search warrant should be suppressed. Therefore, we reverse and remand for further proceedings consistent with this opinion.
¶ 21. We clarify that our holding is not, as the dissent suggests, that a confidential informant "can never give reliable information, so as to constitute probable cause, while serving for the first time as a confidential informant." Rather, we hold that, under the circumstances of this case, particularly where the only corroboration of the CI's statement was not presented to the magistrate issuing the search warrant, probable cause did not exist for the issuance of the search warrant. As we have already stated, the informant's evidence would have been sufficient to sustain probable cause had the controlled buy been discussed with the magistrate issuing the search warrant. We also note that the *942 buy could have been disclosed to the magistrate without putting the information in the affidavit; however, Officer Spooner's testimony did not indicate that the buy was ever mentioned to the magistrate in any way. Therefore, contrary to the argument made by the dissent, the omission was not made to protect the identity of the confidential informant.

2. Failure to Reveal the Identity of the CI
¶ 22. As this issue could have an impact on the proceedings on remand, we address it here. The identity of a CI must be revealed, upon request by the defense, if the CI participates in the crime or if the CI is an eyewitness to the offense. Bradley v. State, 562 So.2d 1276, 1279 (Miss. 1990). There is no evidence here to indicate that the CI in question was in any way a participant in Roach's crime.
¶ 23. According to Rule 9.04 B2 of the Uniform Rules of Circuit and County Court, an informant's identity must be disclosed if the CI "was or depicts himself/herself as an eyewitness to the event or events constituting the charges against the defendant." Here, the event constituting the charge against Roach was the officer's discovery of the cocaine and hydromorphone pursuant to the search warrant. Therefore, the CI was not an eyewitness to the crime, and disclosure of his identity is not required.

3. Arrest of Defense Witness
¶ 24. This issue is moot due to our remand of this case to the trial court.

4. Denial of Petrice Roach's Motion for a Directed Verdict
¶ 25. As stated earlier, Roach and Petrice, husband and wife, were tried together. At the conclusion of the State's case, Petrice moved for a directed verdict, and the motion was denied. However, it was granted at the conclusion of the entire case. Roach argues that it was error for the trial court not to have granted the motion at the conclusion of the State's case, since no new evidence was offered by Petrice. Roach reasons that the delay in granting the motion prejudiced him since it precluded his wife from testifying in his behalf because she also was on trial. Since we are reversing and remanding Roach's conviction, we see no need to address this issue, because on remand, Petrice will be free to testify if she chooses to do so without criminal charges hovering over her.

5. Sufficiency of the Evidence
¶ 26. We decline to address this issue, as this Court cannot say whether whatever evidence is produced on remand will be sufficient to sustain a conviction.

6. Constitutionality of Sentence
¶ 27. Although a non-issue in the sense that we are remanding this case, we note that the sentence in this case was constitutional. Roach was sentenced to 108 years total as a habitual offender under Mississippi Code Annotated section 41-29-147 (Rev.2005). Roach contends that the court abused its discretion in sentencing him to the maximum possible term of incarceration for his convictions. However, the Mississippi Supreme Court has made clear that a sentence within the statutory limits, like the one imposed on Roach, is acceptable and will be upheld on appeal. Rogers v. State, 928 So.2d 831, 835(¶ 12) (Miss. 2006). Further, Mississippi Code Annotated section 99-19-81 (Rev.2000) provides that a person sentenced as a habitual offender under the stated code section "shall be sentenced to the maximum term of imprisonment prescribed for such felon, and such sentence shall not be reduced or *943 suspended nor shall such person be eligible for parole or probation."
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE, P.J., CHANDLER, BARNES AND ISHEE, JJ., CONCUR. MYERS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, ROBERTS AND CARLTON, JJ.
MYERS, P.J., Dissenting.
¶ 29. I respectfully disagree with the majority opinion and would affirm Roach's conviction of possession of controlled substances. The majority reverses Roach's conviction, holding, essentially, that a confidential informant can never give reliable information, so as to constitute probable cause, while serving for the first time as a confidential informant. I find this holding problematic and, therefore, dissent.
¶ 30. The facts in this case are simple. Investigating Officers Spooner and Bullock received information from a confidential information that Roach was storing illegal narcotics at his home. However, before the officers submitted an affidavit for a search warrant for Roach's home, they needed to establish probable cause. On the same day as receiving the confidential informant's telephone call, the officers arranged a controlled buy between the informant and Roach to substantiate the informant's claims. After the controlled buy was completed, the officers had reliable information for the execution of a warrant for Roach's residence. Officer Spooner, on the same day, then presented an affidavit for a warrant stating in pertinent part, "this confidential informant, having furnished me with information in the past that has proven to be true and correct regarding the trafficking of illicit narcotics, is known by me to be a truthful, credible, and a reliable source of information." A search warrant was issued, Roach was arrested, then convicted by a jury, and he now appeals.[1]
¶ 31. The majority finds that Officer Spooner's averment made in his affidavit for the procurement of the search warrant to be insufficient to establish probable cause. The language of the affidavit that the majority finds troubling is the portion that the officer averred to have been given information from the informant "in the past" regarding drug trafficking. However, I find that the underlying facts in this case have shown that Officer Spooner did, in fact, receive and use information provided to him by the confidential informant to arrange a controlled buy of narcotics between the confidential information and Roach before submitting an affidavit for a warrant. This fact was testified to by Officers Spooner and Bullock and remains uncontested otherwise. Therefore, the statement that Officer Spooner made in his affidavit concerning his receiving information from this confidential informant "in the past" is correct and supportive of a finding of probable cause. It matters none that the "past" occurred within the same day. To hold otherwise, I think, would be punishing speedy police work in apprehending one involved in illicit drug crimes.
*944 ¶ 32. The majority relies heavily on the case of Pipkins v. State, 592 So.2d 947 (Miss.1991), in holding that Officer Spooner improperly procured a search warrant because the information supportive of probable cause came to light on the same day as the affidavit was submitted for the issuance of a warrant. While the facts of Pipkins and the case at hand have one aspect in common (i.e. that the affidavit drafting officer only knew the confidential informant for a short period of time before utilizing his information to obtain a search warrant), the case of Pipkins is easily distinguishable from the case at hand. In Pipkins, the police received a telephone call from a confidential informant who reported that a quantity of marijuana was going to be delivered in a blue truck to a certain address. The informant further provided to the officer that he personally viewed a quantity of marijuana at that address within the past twenty-four hours. However, other than the informant's statements to the officers over the telephone, no other corroboration of these facts was made by the officer prior to obtaining a search warrant for the address.
¶ 33. Based on this information provided by the informant over the telephone regarding Pipkins' illegal activity, an officer averred that "in the past [the informant] has provided information to other law enforcement agencies that has proved reliable and has led to the arrest of numerous drug offenders" in order to obtain a search warrant for the particular address. At the suppression hearing, the officer revealed that, in fact, he had never used the CI's information in the past to lead to an arrest and the officer was aware that the CI may not have actually seen a quantity of marijuana at Pipkins' home. The supreme court reversed Pipkins' conviction "because the `reliable information' contained in the warrant had never been relied upon before, [and] thus probable cause did not exist." White v. State, 742 So.2d 1126, 1131(¶ 9) (Miss.1999) (discussing the holding of Pipkins, 592 So.2d at 951-52).
¶ 34. At the suppression hearing, the officer in Pipkins testified that he had known the informant against Pipkins "for only a few days or possibly had met him only on the day of the warrant's issuance when he was given the information." Pipkins, 592 So.2d at 948. However, there is one significant difference in the case sub judice and the case of Pipkins: the confidential informant in our case corroborated his information, by performing a controlled buy under the supervision of the officers from Roach, before Officer Spooner applied for a search warrant for Roach's house. This controlled buy in which the confidential informant participated gave the officers enough indicia of reliability to support their affidavit for issuance of the search warrant. The factual difference in this case from the case of Pipkins sets apart the entire analysis applicable in determining whether the search warrant was executed within the bounds of the law.
¶ 35. Furthermore, there is no requirement that an officer specifically detail his past relationship with a confidential informant in his affidavit for a search warrant, especially when special detail would reveal the identity of the informant. Arnett v. State, 532 So.2d 1003, 1006-08 (Miss.1988); Read v. State, 430 So.2d 832, 835-36 (Miss. 1983) (quoting Young v. State, 245 So.2d 26, 27 (Miss.1971)). Officer Spooner testified that the details of the controlled buy were not published in his affidavit in order to protect the identity of the confidential informant. To withhold specific details concerning a confidential informant in an affidavit for a warrant does not amount to falsifying or providing misleading information to an warrant issuing judge. To the contrary, our supreme court has recognized the importance of protecting the *945 identity of a confidential informant in the name of protecting the case in which law enforcement is working in stating that when "[t]he true names of confidential informants are not revealed, [this is] in order to protect their safety and to make it possible for them to continue working undercover until such time as they must be revealed to complete prosecution of the cases involving them." Jones v. State, 912 So.2d 973, 974 n. 1 (Miss.2005).
¶ 36. The Fourth Amendment to the United States Constitution and Article 3, section 23 of the Mississippi Constitution protect against only unreasonable searches and seizures. When a warrant is issued for a search and seizure, the warrant must be based on "judicial determination that probable cause exists based upon the affidavit or other evidence before the court." Miss. Unif. R.P.J. Ct. 3.03. When we review whether a search warrant was issued based on probable cause, we are to determine whether the issuing judge:
[made] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supply hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... concluding" that probable cause existed....
State v. Woods, 866 So.2d 422, 426(¶ 12) (Miss.2003) (quoting Ill. v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
¶ 37. The requirement that the informant have a "basis of knowledge" supportive of finding probable cause can be established by a confidential informant's personal, first-hand observation. Woods, 866 So.2d at 426(¶13). Here, this is exactly the case. The confidential informant relayed to Officers Spooner and Bullock that he had personal, first-hand knowledge that Roach possessed controlled substances at his residence. Therefore, this prong of establishing probable cause is met.
¶ 38. The remaining requirement that must be established for a finding of probable cause is the veracity of the informant. Veracity is proven by showing that the informant is truthful or reliable. Our supreme court has found that "[u]sually this corroborating evidence consists of a statement that the officer had successfully used the [confidential informant] in the past ... or that an undercover agent had seen the suspect engaging in behavior consistent with the current investigation." Woods, 866 So.2d at 426(¶ 14) (citations omitted). Our courts have never held that it is necessary that such corroborating information provided by the informant actually led to an arrest. See contra Maj. Op. ¶¶ 15-16. Here, Officer Spooner provided in his affidavit that the confidential informant had "furnished [him] with information in the past that has proven to be true and correct regarding the trafficking of illicit narcotics." The corroborating evidence to which Officer Spooner referred in his affidavit was the controlled buy that he witnessed the confidential informant perform. Thus, the affidavit averring the confidential informant's veracity was truthful and sufficient so as to constitute a showing of probable cause.
¶ 39. The majority holds that probable cause did not exist for the issuance of the warrant because the details of the controlled buy were not divulged either in the affidavit or by Officer Spooner's oral disclosure. In coming to this conclusion, the majority states that Officer Spooner did not relate to the issuing judge information regarding the controlled buy. See Maj. *946 Op. ¶¶ 13, 17, 20, 21. I can find no support for this assertion in the record. During the suppression hearing, Officer Spooner testified that he presented the underlying facts and search warrant to the issuing judge. However, Officer Spooner was never questioned during the suppression hearing regarding whether he had a conversation with the judge during the issuance of the warrant or what information was disclosed. Without a record of the proceeding in which the judge signed the search warrant, we, as a reviewing court, cannot know whether or not the controlled buy was discussed with the judge before the search warrant was issued.
¶ 40. What is more, even if Officer Spooner's affidavit statement did not detail specific facts of his past relationship with the confidential informant, who provided details of Roach's possession of controlled substances, this omission would not necessarily constitute an insufficient basis for a finding of probable cause. Our law does not require such a detailed averment in an affidavit made to procure a search warrant. See Miss. Unif. R.P.J. Ct. 3.03. "Nor does it indicate that each factual allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint." Gates, 462 U.S. at 232, 103 S.Ct. 2317 (citation omitted). "It simply requires that enough information be presented to the Commissioner to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." Id.
¶ 41. I am of the opinion that Officer Spooner averred a truthful statement supporting the issuance of the search warrant. The affidavit used to obtain a warrant for the search of Roach's residence was sufficiently pled so as to allow a judge to consider the totality of the circumstances in order to issue a warrant. The trial judge did not commit error in denying Roach's motion to suppress the evidence presented against him at trial. It is for these reasons that I must dissent.
GRIFFIS, ROBERTS AND CARLTON, JJ., JOIN THIS OPINION.
NOTES
[1] The affidavit used to obtain a warrant for Roach's residence incorrectly listed the date as January 23, 2003; however, this date discrepancy can be merely classified as a typographical error and immaterial to the case at hand. The date does not aver that the officers received the confidential informant's telephone call any earlier than the day that the controlled buy occurred and the day that the warrant was issued.