945 So.2d 992 (2007)
Johnny TURNER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00255-COA.
Court of Appeals of Mississippi.
January 2, 2007.
*994 William Michael Mallette, Attorneys for Appellant.
Office of the Attorney General by Deirdre McCrory, attorneys for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Johnny Turner was convicted in the Circuit Court of Oktibbeha County of the crimes of manufacturing methamphetamine and possession of .02 grams of methamphetamine. He was sentenced, as an habitual offender, to serve life in the custody of the Mississippi Department of Corrections on each count. The two life sentences were to be served concurrently, and neither are subject to suspension, reduction, parole, or probation. Turner appeals and argues that: (1) he was denied his right to confrontation, (2) the trial court should have considered his motion to suppress, (3) he was entitled to a circumstantial evidence instruction, and (4) his trial counsel was ineffective. As we explain below, we find that this case must be reversed and remanded for proceedings consistent with this opinion.

FACTS
¶ 2. Acting on a tip from Mary Shaffer Roberts, the Tri-County Narcotics Task Force secured a search warrant on June 28, 2001, for Turner's residential property. The affidavit supporting the warrant stated that Roberts was a known and reliable informant. When they arrived the next day, the narcotics agents found Turner in a shop, behind his house. Various items were seized from Turner's pockets, the shop, his house, and two trucks in his yard. He was arrested and charged with manufacturing and possession of methamphetamine.
¶ 3. Two motions to suppress were filed but never heard. The first, filed July 23, 2002, was ruled abandoned by the trial court, when Turner's counsel did not appear at the hearing. The second, filed April 30, 2004, was ruled untimely.
¶ 4. Trial began on May 4, 2004. The continuances from 2002 to 2004 are largely attributed to Roberts's refusal to testify and successful efforts to dodge subpoena service. At trial, Agent David Holley admitted that he had no prior relationship with Roberts. Holley testified that he had not met Roberts before the day that she gave the information which was included in the underlying facts and circumstances supporting the search warrant. Holley was asked this question: "Okay. But just so we make sure for the jury, you never met the confidential informant until that night, correct?" He answered, "Correct."
¶ 5. After Holley finished his testimony, defense counsel informed the court that he had a motion that he wanted to make outside the presence of the jury. The following exchange occurred:

*995 BY MR. FOLSE: Your Honor, we have a motion to dismiss at this point before we go any further with regards to the underlying facts and circumstances contrary to what officer Holley has testified to here about. Well, what he testified was that he just met her that night. What he wrote on his underlying facts and circumstances report, Your Honor, was that I was contacted by a known and reliable confidential informant of the Tri-County Narcotics Task Force. On this date the CI informed this officer that she was at the residence of Johnny Turner. Talking about the same person, Your Honor. Affiant, to me that assumes it was taken under oaththis was taken under oath. I don't know if Mary's going to appear here today and cure [sic] all this up for us or not, but she ain't been here so far. Your Honor, we don't think they were on the property legally.
* * * *
BY THE COURT: Overruled. The question as to whether or not the officers were legally on the premises is not before the Court. That is brought before the Court's attention on a motion to suppress. There's been no motion to suppress heard in this case, and been no motion to suppress brought to the Court's attention. I see that there's one filed on April the 30th. This case has been pending substantially before then. There's no issue as to the legality of the officers and legality of the search warrant, period. The officers were acting under the authority of a warrant whose legality, the issuance of, has not been questioned previously and not been brought to the Court's attention. Period.
BY MR. MALLETTE (co-counsel for the defense): May I speak, Your Honor, on that issue?
BY THE COURT: Certainly.
BY MR. MALLETTE: The only issue I wish to raise is that the motion you're speaking of is one that I filed in this case.
BY THE COURT: April 30th. And my understanding is you're no longer in the case or wasn't in the case. It's in the court file, but was never brought to the Court's attention.
BY MR. MALLETTE: Yes, sir. When I filed that, I spoke with the court administrator, Ms. Langford, and she informed me that that would be something that the Court would entertain the day of trial.
BY THE COURT: Hasn't been brought up [sic] to my attention. There's been no objection to the introduction of any evidence found and recovered pursuant to the warrant. If it is issued, a warrant is issued by a magistrate, the defendant not only must file the motion and bring it to the Court's attention, the defendant has the burden of proof in going forward on the motionnot the Stateif a warrant was issued. And a warrant's [sic] issued in this case.
* * *
BY THE COURT: I expect that the court administrator also referred you to the order of arraignment in the case. Let's see. Discovery is required by defendant and request for discovery should be made no later than February 11, 2002., and completed 30 days from the date thereof. Pretrial motions shall be filed and noticed to the court administrator no later than February the 16th of 2002. The failure of this shall be an abandonment of said motions pursuant to rule 9.04. Signed by Judge John M. Montgomery, circuit judge.
BY MR. MALLETTE: Yes, sir. I understand that. Just for purposes of the record, could I just make a proffer that *996 I did discuss that with the court administrator and she did inform me that it would be the practice of this Court at the time that I spoke with her that the Court would entertain that, I guess, on this date. This being the trial date.

ANALYSIS AND DISCUSSION OF THE ISSUES
I. Should the trial court have considered the motion to suppress?
¶ 6. Turner argues that the trial court abused its discretion in failing to entertain the ore tenus motion to suppress raised during trial, as well as the April 30 pretrial motion to suppress. The State responds that the trial court was within its discretion in refusing to hear an untimely motion.
¶ 7. "[T]he court may set a reasonable deadline for the filing and hearing of all pretrial motions. Pretrial motions shall include . . . motions to . . . suppress evidence. . . ." URCCC 8.02.
It is the duty of the movant, when a motion . . . is filed . . . to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion; however, said motion may be heard after the commencement of trial in the discretion of the court.
URCCC 2.04.
¶ 8. Recently, we held that a motion for DNA analysis had been abandoned under Rule 2.04. Pittman v. State, 928 So.2d 244, 247-48(¶ 5) (Miss.Ct.App.2006). The motion had been filed before trial, but the defendant had not brought the matter for hearing before the court. Id. at 247(¶ 5). Procedural bar notwithstanding, we held that Pittman did not sustain his burden of proof on the motion. Id. at 248(¶ 6). Likewise, we have held that a pro se motion to dismiss defense counsel was abandoned under Rule 2.04 when it was not brought to the trial court's attention. Roy v. State, 878 So.2d 84, 89(¶ 23) (Miss.Ct. App.2003). While the trial court has a responsibility to intervene when ineffective assistance of counsel is apparent, that was not the case in Roy. Id. at (¶ 25).
¶ 9. In this case, the arraignment order provided that pretrial motions were to be filed by February 26, 2002. On July 24, Turner moved to continue the trial because of the unavailability of Roberts as a witness. In a separate motion, Turner moved to suppress the evidence based on an illegally obtained warrant. The trial court granted the motion to continue, because the "State has provided new additional discovery on July 24, 2002, and the Defendant has a material witness unavailable." On September 12, Turner filed a second motion to suppress in which he specified his allegations that the search warrant was illegal:
the drug enforcement agencies in this case relied on two written statements which were supplied to the Defendant in discovery, the first statement typed and the second handwritten and unsigned, allegedly given by Maria [sic] Roberts in order to obtain the search warrant in this case. Based upon information received by Kathy Shaffer, the mother of the witness, the Defendant would expect the sworn testimony of Maria [sic] Roberts was coerced or otherwise pressured into signing the typed statement, and that she did not give the unsigned statement at all. Further, the Defendant would show that the drug enforcement agents gave information to the Judge who signed the search warrant that the information on which the warrant was based was information supplied by a "known and reliable confidential informant of the Tri-County Narcotics Task *997 Force;" and through sworn testimony of Maria [sic] Roberts the Defendant would show that she had never given any prior information to any drug agency, and therefore, the Underlying Facts and Circumstances affidavit presented to the Judge who signed the search warrant contained material misrepresentations of fact so as to render the issuance of that search warrant invalid.
This motion was accompanied by counsel's affidavit reciting the same facts. That same day, Turner filed another motion to continue trial due to Roberts's unavailability. The motion hearing was eventually scheduled for July 8, 2003, and trial was scheduled to begin on August 5.
¶ 10. Defense counsel failed to appear at the hearing on the motion to suppress. The trial court held that the motion was "overruled as abandoned; and the evidence sought to be suppressed shall be admitted at trial upon the showing of a proper predicate." Trial was continued several more times due to Roberts' unavailability.
¶ 11. On April 30, 2004, defense counsel filed another motion to suppress. This motion was based on the identical grounds asserted in the previously denied motion. That same week, new defense trial counsel, Glenn Folse, was retained. The April 30 motion was not brought to the court's attention prior to the commencement of trial on May 4.
¶ 12. As stated, the State's first witness, Holley, admitted during cross-examination that Roberts was not a known and reliable informant, contrary to what he asserted in the affidavit supporting the search warrant. After Holley's testimony, Turner's trial counsel made a motion to dismiss. The court overruled the motion to dismiss, and gave the following explanation:
The question as to whether or not the officers were legally on the premises is not before the Court. That is brought before the Court's attention on a motion to suppress. There's been no motion to suppress heard in this case, and been no motion to suppress brought to the Court's attention. I see that there's one filed on April the 30th. This case has been pending substantially before then. There's no issue as to the legality of the officers and legality of the search warrant, period. The officers were acting under the authority of a warrant whose legality, the issuance of, has not been questioned previously and not been brought to the Court's attention. Period.
¶ 13. Under the Uniform Rules, the trial court did not abuse its discretion in refusing to hear the motion which was filed on April 30. It was based on the identical grounds contained in the motion which was scheduled to be heard on July 8, 2003, but which was not heard because counsel failed to appear. There is no doubt that the failure to pursue a motion to decision is deemed an abandonment of the motion. URCCC 2.04. However, it is what transpired during the trial that gives us grave concern. As stated, the State's key witness admitted that what he had said in the affidavit for the search warrant was not correct. After that testimony, the trial court was faced with a key question: whether it is within constitutional limits to accept as evidence the fruits of what was then known to possibly be an invalid search warrant, notwithstanding that the delay in discovering this fact was caused by counsel's failure to pursue the motion to suppress.
¶ 14. Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) gives us some guidance, but is not *998 controlling. In Franks, the United States Supreme Court held:
Where the Defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the Affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that a hearing be held at the Defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the Defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
¶ 15. Turner, through cross-examination of Holley, made a substantial preliminary showing that a false statement was knowingly made in the affidavit. If this statement was necessary to the finding of probable cause, then Franks requires that a hearing be held at Turner's request. However, Franks does not address the precise question we face here, as Turner was initially afforded the opportunity for a hearing, but his counsel failed to appear. As we next discuss, Pipkins v. State, 592 So.2d 947 (Miss.1991) seems more applicable to our facts.
¶ 16. In Pipkins, an affidavit for a search warrant alleged that the officer's information was from a reliable confidential informant. Id. at 947. Our supreme court held that the officer's testimony at the suppression hearing supported the trial court's original denial of the motion to suppress. Id. at 949. However, on cross-examination at trial, the officer admitted that he had just met the informant within a day of the search. Id. at 948. The officer was able to corroborate "nothing of a criminal nature" and what he did corroborate "could have been as innocent as corroborating that the defendant lived in the house searched." Id. at 951. Because of the trial testimony, the court held there was no probable cause to support the warrant, and the contraband discovered during the illegal search should have been suppressed. Id. at 952.
¶ 17. In reaching its conclusion in Pipkins, the Mississippi Supreme Court said this:
Charles Pipkins argues on appeal that the lower court was in error when it failed to rule, at the pre-trial motion to suppress, that the warrant issued for the search of his home was issued upon insufficient probable cause. Alternatively, Pipkins asserts that the issuing magistrate, Justice Court Judge Louis Fondren, was misled by the "Affidavit for Search Warrant" and statement of "Underlying Facts and Circumstances" presented by Deputy Ron Cooley in support of his application for search warrant. Finding merit in Pipkins' alternative argument, we are compelled to reverse and remand for further proceedings.
Pipkins, 592 So.2d at 949.
¶ 18. In our view, Pipkins stands at least for the proposition that when the issuing magistrate is given false facts which are indispensable to the probable cause determination, probable cause cannot exist, and the fruits of the search must be suppressed, even if the search warrant was properly issued based on the false facts which were presented to the magistrate. When the true facts are revealed, the prior probable cause determination must yield to the new reality occasioned by the new and correct set of facts. Therefore, we find that the trial court abused its *999 discretion in summarily dismissing Turner's trial motion.
¶ 19. We reverse and remand this matter to the trial court to consider whether Officer Holley knowingly and intentionally gave false and misleading information to the issuing judge. The trial court shall determine whether the information obtained from Roberts should be stricken from the affidavit, and the remaining information, if any, should be used to determine if probable cause existed. If there was no probable cause to support the warrant, the evidence was illegally seized, and Turner is entitled to have it suppressed. Pipkins, 592 So.2d at 952. This result would require a new trial. If the court finds that there was probable cause to support the warrant, the trial court should enter an order with its findings of fact and conclusions of law. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
II. Was Turner denied his right to confrontation?
¶ 20. Turner also argues that he was denied his right to confront and cross-examine his accuser, Roberts, because she did not testify at trial. The State counters that this argument is waived. In the alternative, the State maintains that the right to confront and cross-examine is limited to in-court testimony.
¶ 21. The standard of review for constitutional issues is de novo. Baker v. State, 802 So.2d 77, 80 (Miss.2001). In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. This right applies to in-court testimony as well as out-of-court statements. Crawford v. Washington, 541 U.S. 36, 50-51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The right to confront and cross-examine a witness is a fundamental right, which is not waived for failure to object. Hobgood v. State, 926 So.2d 847, 852(¶ 11) (Miss.2006). Prior testimonial statements are not admissible under the Sixth Amendment unless the witness is (1) unavailable at trial and (2) the defendant had a prior opportunity for cross-examination. Crawford, 541 U.S. at 68, 124 S.Ct. 1354. Roberts' statements were never admitted into evidence, nor did she testify at trial; therefore, there is no confrontation problem. This issue has no merit.
III. Should the trial court have sua sponte granted a circumstantial evidence instruction?
¶ 22. Turner's next allegation is that he was entitled to a circumstantial evidence instruction, because there was no direct evidence that he either manufactured or possessed methamphetamine. He acknowledges that he did not request it, but asserts that the trial court should have sua sponte given one. The State responds that the duty to request such an instruction is on Turner. We agree.
¶ 23. While a circumstantial evidence instruction may be appropriate, it remains incumbent upon the defendant to request such an instruction. Savage v. State, 764 So.2d 445, 448(¶ 9) (Miss.Ct.App. 2000). A trial court is not required to sua sponte grant such an instruction. Id. at 448 (¶¶ 9-10). This issue has no merit.
IV. Was Turner denied effective assistance of counsel?
¶ 24. Finally, Turner challenges the effectiveness of trial counsel[1], citing five alleged deficiencies. The State maintains that this issue should be denied at this *1000 juncture without prejudice to Turner raising the issue in post-conviction relief proceedings. We decline to accept the State's suggestion, as the matters which Turner suggests constitute ineffective assistance of counsel are amply developed in the record before us.
¶ 25. To prove ineffective assistance of counsel, Turner must demonstrate that his counsel's performance was deficient, and this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, to make out this type of claim, Turner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 104 S.Ct. 2052. The prejudice prong of the test, unlike the determination of whether counsel's performance fell below an objective standard of reasonableness, may be made with the benefit of hindsight. See Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The burden of proof rests with Turner. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
A. Trial counsel failed to ask for a mistrial or limiting instruction after a potential juror made statements about facts of the case heard on a news report.
¶ 26. Turner argues that trial counsel should have moved for a mistrial due to tainting of the jury pool by a potential juror's comments. During voir dire, the court asked if anybody may have heard of this case on the news. Venire member Queen Easter Pope spoke up:
I can't remember. Everything is foggy. But look like I read about it, maybe saw it on TV if it was and everything.
BY THE COURT: Is there anything
BY THE JUROR: He looks familiar, but I just can't remember well enough. I had to tell you because it may come to me later on.
BY THE COURT: Okay, but you don't recall anything right now or even if you did read or see anything about it?
BY THE JUROR: You know, some of the things that they wasit was somethingcan you tell some of the stuff? Maybe I can
BY THE COURT: No, ma'am. My question is trying to find out whether you recall anything about it or not, not whether I recall anything about it.
BY THE JUROR: I was tryingI thought if you was thinking about something and seeing that I remember about a story like that. But I can't remember just for sure whether I did because at first I thought it was another one, and then it wasn't that. So I'm not sure. I just had to tell you because I, you know, don't want to fool around here and mess up.
BY THE COURT: My next question is whatever it was you might have read, if anything, has it caused you to already make your mind up about *1001 whether you think that the defendant Mr. Turner in this case is guilty or not guilty in this case? Have you formed any ideas one way or another because of what you read?
BY THE JUROR: Well, look like I can remember something on television. It might not have been it. And look like, you know, that it was no doubt that, you know, that happened.
BY THE COURT: Then what you're telling me is that what you might have seen could have caused you to form an opinion about it if it was about this case?
BY THE JUROR: It was just as clear, you know, whether it was actually happening that the news people had on
BY THE COURT: Thank you.
BY THE JUROR: as we standing here.
¶ 27. The State challenged Pope for cause. Trial counsel objected, "She's a little vague and unclear. . . . I couldn't get that she could not be fair and impartial." The trial court responded, "[S]he said that she may have formed an opinion because she may have seen it and that she couldn't be fair and impartial because of what she may have seen." The trial court granted the cause strike.
¶ 28. We find that trial counsel's failure to move for a mistrial was not deficient under Strickland. The juror was not sure if she had heard anything about this case. She did not reveal anything that the news may have said about Turner or the case she may have seen. All she said was that she believed whatever she saw on the news had happened. It was not unreasonable for trial counsel to not ask for a mistrial, since the jury was not exposed to any extrajudicial influence from these statements.
B. Trial counsel only asked for five minutes to deliberate over his juror challenges.
¶ 29. Turner next faults trial counsel for asking the court for five minutes to consider his peremptory challenges. He says that this was not nearly enough time, and that trial counsel, being from outside of Starkville, should have had a local attorney to help him with voir dire. Even were we to assume that this was deficient conduct, there was no prejudice under the second prong of Strickland. But for these assumed errors, there is not a reasonable probability that the result would have been different. The trial court gave counsel more time than he requested. There is no evidence in the record that trial counsel did not take the time that was given him. He used all six challenges after the State's first tender, and Turner does not suggest that trial counsel failed to strike someone that he should have.
C. Trial counsel failed to ask for a circumstantial evidence instruction.
¶ 30. The third ineffective assistance claim is that trial counsel failed to ask for a circumstantial evidence instruction. During opening statements, cross-examination, and closing argument, trial counsel asserted that there was no direct evidence to convict Turner. No witness saw him make methamphetamine, and there is no evidence that he ever physically possessed methamphetamine.
¶ 31. In Ivy v. State, 589 So.2d 1263, 1266 (Miss.1991), the supreme court held that the defendant was not denied effective assistance of counsel when counsel failed to ask for a circumstantial evidence instruction. Ivy was tried for possession of narcotics on a theory of constructive possession. Id. at 1265-66. Police testimony that the drugs were within Ivy's constructive *1002 possession was deemed direct evidence, and no circumstantial evidence instruction was required. Id. at 1266.
¶ 32. Likewise, Turner was convicted of possession of methamphetamine on a theory of constructive possession. Agent Holley gave testimony that at the time Turner was found, Turner was alone, within three feet of .02 grams of methamphetamine spilled from a vial onto a coffee table. He was found with a pipe and burnt foil in his actual possession. He was the owner of the premises in question. This was direct evidence of constructive possession, which would have defeated any request for a circumstantial evidence instruction. Trial counsel was not ineffective for not requesting such an instruction on the possession count.
¶ 33. We now turn to the count for manufacturing methamphetamine. Although there was direct evidence that someone was manufacturing methamphetamine, there was no direct evidence that Turner was manufacturing methamphetamine. Direct evidence that a crime was committed without direct evidence that the defendant committed the crime, is not enough to defeat a circumstantial evidence instruction. Price v. State, 749 So.2d 1188, 1194(¶ 16) (Miss.Ct. App.1999). An eyewitness' account is direct evidence. Id. A circumstantial evidence instruction must be given when the prosecution is without a confession and without eyewitnesses to the gravamen of the offense charged. Id. at 1195-96(¶ 22). Failure to request a circumstantial evidence instruction, when the evidence against one's client is wholly circumstantial falls below the standard of reasonable professional assistance. There can be no doubt that but for trial counsel's failure to request a circumstantial evidence instruction Turner would have been granted one.
¶ 34. However, given the overwhelming circumstantial evidence in this case, we cannot say that but for this failure there is a reasonable probability that the result of the trial would have been different. The testimony was that methamphetamine was being manufactured at the time Turner was found on the property and within several feet of the manufacturing process. No person other than the Turner's disabled child, who was in bed in the house, was on the property at the time. Specifically, 100 to 125 pseudoephedrine pills were soaking in a tank of anhydrous ammonia. Every ingredient and tool needed to make the drug was found in the shop, except for a lithium battery which was found in Turner's pocket. This issue has no merit.
D. Trial counsel failed to call witness Kimberly Ray.
¶ 35. Turner faults his trial counsel for not calling Kimberly Ray as a trial witness. Turner claims that Ray would have testified that the information in the affidavit underlying the search warrant was not true. Specifically, "Kimberly Ray could have testified about the whereabouts of her husband [Chris Ray] on the night of June 28, 2001. . . . The defendant as a matter of strategy wanted to call Mrs. Ray to cast doubt upon the credibility of Roberts whose statements to Agent Dave Holley provided the basis for the search warrant. Chris was apparently the person accused in the warrant of manufacturing methamphetamine at Turner's shop. Essentially, Kimberly would have testified that her husband was not at Turner's property at the time Roberts claimed that he was. While Kimberly's testimony may have been helpful at a suppression hearing, trial counsel could have well believed it would be counterproductive at trial. If pressed by the State, Kimberly may have blamed Turner, in order to protect her *1003 husband. Furthermore, counsel's failure to call Kimberly did not cause any prejudice to Turner. Trial counsel made the point to the jury through other testimony, without placing a witness on the stand whose interests were not wholly aligned with Turner's.
E. Trial counsel failed to request a continuance due to Roberts' unavailability as a witness.
¶ 36. The final assignment of ineffective counsel is trial counsel's failure to move for a continuance. Turner says he was entitled to a continuance because Roberts was a material witness who remained unavailable for trial.
¶ 37. Trial counsel certainly could have requested a continuance and, as the history of the case shows, may have been granted one. The history of the case shows, too, that the continuance may well have been in vain, since Roberts had dodged subpoena service for approximately two years. Turner does not allege what Roberts would have testified to, other than, "The defendant believes that making this witness be present and subjected [sic] to cross-examination would have exposed the nature of her deceitful statement, thereby, proving his innocence to the jury." Apparently Turner believes Roberts should have been called as an adverse witness, where her accusations underlying the search warrant would be proved false. As noted earlier, her statements were kept out via hearsay objections. There was thus no need to impeach her.
¶ 38. Trial counsel made the decision to go ahead with trial and have Roberts' statements excluded altogether, rather than postpone trial and have Roberts give damning testimony simply to impeach her. Needless to say, the jury would still have been free to believe Roberts, despite trial counsel's best efforts to impeach her. Trial counsel's conduct was certainly reasonable strategy in this regard, and thus not deficient under Strickland. Additionally, we find no prejudice. At worst, trial counsel's decision had the same effect on the outcome of Turner's trial, i.e., the jury did not consider Roberts' accusation. This issue has no merit.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
LEE, P.J., CHANDLER, BARNES AND ISHEE, CONCUR. KING, C.J. AND CARLTON, J., NOT PARTICIPATING. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J. AND ROBERTS, J.
GRIFFIS, J., Concurring in Part and Dissenting in Part.
¶ 40. I respectfully dissent from Part I of the majority's opinion. I concur in the remainder of the opinion insofar as is it consistent with my reasoning that follows.
¶ 41. The majority finds that the trial court abused its discretion in failing to entertain the ore tenus motion to suppress raised during trial. I am of the opinion that the trial court was within its discretion. The trial court handled this matter in accordance with Rules 2.04 and 8.02 of the Uniform Rules of Circuit and County Court.
¶ 42. It is important to note that Turner's counsel (who is also counsel on appeal) failed to appear at both of the scheduled hearings on the motion to suppress. Counsel has given no reasons for this failure *1004 to appear. There is nothing to indicate that Turner's counsel could not have held a hearing on the motion to suppress and obtained the same evidence from an examination of Holley. There is no evidence that Holley was not available for the scheduled hearing. After Holley's testimony at trial, Turner's counsel argued the motion to suppress. The court overruled the motion to dismiss and the motion to suppress as not having been brought to the court's attention before trial, filed outside of scheduling order, and previously abandoned.
¶ 43. I concede that Turner appears to have satisfied the Franks test, which constitutionally entitled him to a hearing on his motion to suppress. Indeed, Franks does not give a deadline for this preliminary showing requisite to obtain a hearing. The critical fact which poses a problem for Turner is that he did have a pre-trial hearing on a motion to suppress on the exact same grounds as shown at trial. He nevertheless waived this hearing through positive abandonment when his attorney did not appear to argue the motion or present evidence. No explanation for this failure appears in the record. This distinguishes the case from Pipkins. In Pipkins, the parties had a hearing at which the police officer testified inconsistently from his later testimony at trial. So while the trial court did not err in overruling the pretrial motion to suppress, the supreme court found that the officer's trial testimony established lack of probable cause. Here, Turner had an opportunity for a hearing but neither he nor his attorney appeared. Further, there is no reason to believe that Turner was surprised by Holley's testimony. Finally, Turner could have examined Holley at the July 8 hearing. We assume that Holley would have given the same testimony. Even if Holley testified differently, Turner would be in the exact same position as Pipkins, and the Fourth Amendment claim would be preserved.
¶ 44. I would affirm the trial court and conclude that the trial court did not abuse its discretion in refusing to hear the ore tenus motion to suppress.
MYERS, P.J., AND ROBERTS, J., JOIN THIS OPINION.
NOTES
[1] Turner went through three different attorneys. The first was appointed counsel Stephanie Mallette, who served until April 18, 2002, when Turner retained Mickey Mallette. Mr. Mallette served as counsel until one week before trial, when he was replaced with Glenn Folse, the attorney who served as trial counsel. Nevertheless, Mr. Mallette appeared at trial as counsel. Mr. Mallette is now appellate counsel. The ineffective claims are brought only against trial counsel.