## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2014-KA-00201-COA

XAVIER LARRY A/K/A XAVIER GIOVANNIE                    APPELLANT
LARRY

v.

STATE OF MISSISSIPPI                                    APPELLEE

DATE OF JUDGMENT:               05/02/2013
TRIAL JUDGE:                    HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:      MADISON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:        DAMON RAMON STEVENSON
                                L. ABRAHAM ROWE JR.
ATTORNEYS FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                BY: BILLY L. GORE
                                    JASON L. DAVIS
DISTRICT ATTORNEY:              MICHAEL GUEST
NATURE OF THE CASE:             CRIMINAL - FELONY
TRIAL COURT DISPOSITION:        CONVICTED OF BURGLARY OF A
                                DWELLING AND SENTENCED TO
                                TWENTY-FIVE YEARS IN THE CUSTODY
                                OF THE MISSISSIPPI DEPARTMENT OF
                                CORRECTIONS, WITH FIVE YEARS
                                SUSPENDED AND FIVE YEARS OF POST-
                                RELEASE SUPERVISION
DISPOSITION:                    AFFIRMED - 08/23/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

EN BANC.

GREENLEE, J., FOR THE COURT:

¶1.     A Madison County jury convicted Xavier Larry of house burglary. The trial court

sentenced Larry to twenty-five years, with twenty years to serve. Larry appeals, arguing that

the prosecution struck three African American jurors for pretextual reasons, that his

confrontation rights were violated, that his trial counsel was ineffective for failing to request a circumstantial-evidence instruction, and that the evidence was insufficient to support the verdict or, in the alternative, that the verdict was against the weight of the evidence. Finding no error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2.     The Ridgeland home of Cameron Williams was burglarized on June 9, 2011. The day of the burglary, Williams's babysitter left the house with Williams's child at approximately 11:45 a.m. to go to Walmart. They returned to the house at approximately 12:45 p.m. The babysitter noticed that a television was missing. She called Williams, who came home and called the police. In addition to the television, Williams identified as missing a Dell laptop, speakers, and a CD player. Williams initially told the police that she believed the stolen television was a Vizio.

¶3.     On that same day, Officer Michael Martin of the Jackson Police Department pulled over a car for speeding. The driver got out of the car and ran away, dropping his cell phone. Martin picked up the phone. The phone rang. Martin answered the phone. The caller, thinking that Martin was the owner of the phone, told Martin that they had "hit a lick" and that "he had some stolen items, TVs, and he was wanting to know if [Martin] wanted to purchase the items." Martin received that call at 12:51 p.m. Martin agreed to a time and location to purchase the stolen items. When Larry and a man named William Jones arrived at the location, Officer Martin asked where the stolen TVs were, and Larry replied that they were in the trunk. The police recovered from the trunk an Emerson television and a Canon

2

video recorder. Williams later identified the television as the one stolen from her home.

¶4.     Larry denied burgling the house and testified in his own defense at trial. Prior to trial, he stated to the police that he had purchased the items in the trunk from a drug addict. At trial, he testified that he purchased the items from a pop-up thrift market at a gas-station parking lot on Ellis Avenue. Larry's testimony, as well as that of Williams's previous boyfriend, John Staten, established that Larry had been inside Williams's house previously when working for Staten's lawn-care company.

¶5.     When the prosecution examined Officer Martin concerning the items recovered from the trunk of the car Larry and Jones were driving, Officer Martin recounted a conversation with Jones and stated in part:

> [Jones] stated that Xavier Larry had burglarized this house, at that point was a[n] unknown location to me, but I knew it was in Ridgeland, and he said that [Larry] took a Dell laptop, a large TV, a 32-inch TV[,] . . . and a Canon camcorder. That's why I put [the Dell laptop] on my [evidence] sheet, I listed it as still being stolen, because it wasn't in the car.

Jones did not testify at trial. Larry did not object to Officer Martin's testimony concerning Jones's statements. Jones's statements were referenced again later at trial, both by the defense and prosecution.

¶6.     Prior to trial, Larry objected to the State's use of three of four peremptory strikes on African Americans.  Each side was permitted up to six peremptory strikes. The race-neutral reasons put forth by the State for exercising the strikes were unemployment and lack of education. The first African American struck was unemployed and had a high-school degree. The second African American struck had not listed employment or education on the jury

3

questionnaire. The third African American struck had a high-school degree.[1] One African American served on the jury. All members of the jury had college degrees or above. The trial court accepted the State's race-neutral reasons and denied Larry's *Batson* challenge.[2]

¶7. The State conceded at voir dire that the case it would be making was circumstantial. Larry's attorney did not request a circumstantial-evidence jury instruction. Larry appeals his conviction and sentence.

## DISCUSSION

### I. *Batson* Challenge

¶8. Larry argues that the trial court erred in denying his *Batson* challenge. A trial court's ruling on a *Batson* challenge is afforded great deference and will only be reversed where the decision is clearly erroneous or against the overwhelming weight of the evidence. *Burnett v. Fulton*, 854 So. 2d 1010, 1013 (¶7) (Miss. 2003). Criminal defendants "have the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria." *Strickland v. State*, 980 So. 2d 908, 914-15 (¶10) (Miss. 2008) (quoting *Batson v. Kentucky*, 476 U.S. 79, 85-86 (1986)). Once a defendant has made a prima facie case of purposeful discrimination, the party desiring to exercise the challenge has the burden to offer a race-neutral explanation for striking the potential juror, at which point the trial court must determine whether the objecting party has met his burden to prove there has been purposeful discrimination in the exercise of the peremptory challenge. *Id*. at 915 (¶10).

---

[1] The white juror was struck because she was a fifth-grade teacher.

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

4

¶9. Unemployment and lack of education have been widely accepted as race-neutral reasons for exercising a peremptory strike. In *Lockett v. State*, 517 So. 2d 1346, 1352 (Miss. 1987), the Mississippi Supreme Court found that the peremptory strike of an African American juror on the grounds of youth, marital status, and education level was race neutral – even though white jurors with less education were selected – where none of the white jurors selected possessed a similar combination of youth, marital status, and educational background.[3] *See also Mack v. State*, 650 So. 2d 1289, 1298 (Miss. 1994). The United States Court of Appeals for the Seventh Circuit has stated:

> The attainment of a certain education level has been accepted by numerous circuits as a race-neutral criterion for exercising a peremptory challenge under the *Batson* mandate . . . . In *United States v. Lane*, 866 F.2d 103, 106 (4th Cir. 1989), for example, educational level was accepted as a race-neutral reason for striking a minority member where, as here, the prosecutor did not object to the seating of other minority members.

*United States v. Marin*, 7 F.3d 679, 687 (7th Cir. 1993); *see also United States v. Hunter*, 86 F.3d 679, 683 (7th Cir. 1996).

¶10. Cases do exist where lack of education has failed as a racially neutral reason for a peremptory strike. For example, in *Haynes v. Union Pacific Railroad Co.*, 395 S.W.3d 192, 198 (Tex. Ct. App. 2012), lack of education was rejected as a race-neutral reason for striking an African American juror where three white jurors with less education than the struck juror were seated on the jury and the potential jurors were not questioned about education at any stage of the voir dire. This lack of questioning suggested pretext for later citing education as

---

[3] Affirmed on habeas review. See *Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir. 2000).

a race-neutral excuse. *See also Com. v. Basemore*, No. 1762-65, 2001 WL 36125302 (Pa. Ct. Com. Pl. Dec. 19, 2001) (trial court order granting post-conviction relief on a *Batson* challenge where African American jurors were struck due to level of education but white jurors similarly positioned were accepted).

¶11. Here, Larry does not argue that similarly situated white jurors were seated on the jury. Two of the three struck African American jurors possessed a combination of unemployment and lack of education. All members of the jury had higher than a high-school education, an African-American was seated on the jury, and the State did not use all of its available peremptory strikes. Considering the totality of the relevant facts before it, the trial court did not abuse its discretion in determining that Larry failed to meet his burden to demonstrate discrimination on the basis of race in jury selection. This issue is without merit.

## II.     Confrontation Clause Challenge

¶12. Larry argues that Officer Martin's testimony relating the statements of nontestifying codefendant William Jones violated Larry's right to confrontation, warranting reversal. Statements made by a codefendant during a police investigation are inadmissible testimonial hearsay when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Smith v. State*, 986 So. 2d 290, 297 (¶21) (Miss. 2008) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

¶13. Confrontation Clause violations must be objected to contemporaneously to be preserved for appeal. *Ronk v. Sate* 172 So. 3d 1112, 1134 (¶51) (Miss. 2015). "We have consistently applied the procedural bar to Confrontation Clause claims when the issue was

6

not raised at trial." *Id*. We will only recognize plain-error review of a Confrontation Clause violation when the "error affects a defendant's fundamental, substantive right," and "the error resulted in a manifest miscarriage of justice." *Johnson v. State*, 155 So. 3d 733, 740 (¶13) (Miss. 2014) (quoting *Conners v. State*, 92 So. 3d 676, 684 (¶20) (Miss. 2012)). Even when an objection was properly made, "the admission of statements made by a non-testifying defendant in violation of the Confrontation Clause can be harmless error." *Smith*, 986 So. 2d at 300 (¶32) (quoting *Clark v State*, 891 So. 2d 136, 141 (Miss. 2004)).

¶14.    Larry failed to object to Officer Martin's statements at trial. This assignment of error is therefore procedurally barred from consideration on appeal. Further, we do not find that Officer Martin's statements resulted in a manifest miscarriage of justice warranting plain-error review. The jury was presented with significant evidence of Larry's guilt, including his possession of and intent to sell the stolen property very shortly after the time of the burglary, his inconsistent stories of how he obtained the items, and his familiarity with the home that was burglarized. "[W]hen the fact of recent possession of stolen property is supplemented with other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to pass upon the guilt or innocence of the defendant." *Shields v. State*, 702 So. 2d 380, 382 (Miss. 1997) (affirming burglary conviction supported primarily by proof of possession of stolen guns). This argument is without merit.

### III.    Sufficiency and Weight of the Evidence

¶15.    Larry argues that the State failed to present sufficient evidence to support his guilt. In determining whether the State presented legally sufficient evidence to support the verdict,

7

"the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]'" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id*. When a burglary case is circumstantial and possession of the stolen property is the primary evidence of guilt, "[t]he circumstances of possession and the presence or absence of evidence of participation in the crime other than mere possession must be viewed." *Shields*, 702 So. 2d at 382. The particular circumstances to be considered are:

1. The temporal proximity of the possession to the crime to be inferred;

2. The number or percentage of the fruits of the crime possessed;

3. The nature of the possession in terms of whether there [was] an attempt at concealment or any other evidence of guilty knowledge; [and]

4. Whether an explanation [was] given and whether that explanation is plausible or demonstrably false.

*Id*. at 383.

¶16.    Here, the temporal proximity between Larry's possession of the stolen goods and the time of the crime was very close. The burglary occurred between 11:45 a.m. and 12:45 p.m. Officer Martin took the call offering to sell him a stolen TV at 12:51 p.m. Officer Martin proceeded to the meet-up location and found Larry in possession of the stolen TV. At the meet-up, when Officer Martin asked Larry where the "stolen TVs" were, Larry indicated the

8

trunk, evidencing guilty knowledge. He gave inconsistent explanations of how he came to be in possession of the items. Viewing the evidence in the light most favorable to the State, a rational juror could have found beyond a reasonable doubt that the essential elements of the crime existed.

¶17.    In the alternative, Larry argues that the verdict is against the weight of the evidence. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). The evidence is viewed in the light most favorable to the verdict. *Id*. Viewing the evidence in the light most favorable to the verdict, we find that the verdict is not against the weight of the evidence. These arguments are without merit.

### IV.    Larry's Claim of Ineffective Assistance of Counsel Due to Attorney's Failure to Request Circumstantial-Evidence Jury Instruction

¶18.    Larry argues that he received ineffective assistance of counsel due to his trial attorney's failure to request a circumstantial-evidence jury instruction. To prove ineffective assistance of counsel, Larry must demonstrate that his counsel's performance was deficient, and this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Larry therefore bears the burden to demonstrate both that his attorney's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688.

¶19. When the State's case is entirely circumstantial, the defendant is entitled to a jury instruction stating that the State is required to prove the defendant guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. *Rutland v. State*, 60 So. 3d 187, 192 (¶20) (Miss. Ct. App. 2010). However, the defendant can waive his right to receive this instruction by failing to request it, and the trial judge does not have an obligation to give the instruction sua sponte. *Turner v. State*, 945 So. 2d 992, 999 (¶23) (Miss. Ct. App. 2007).

¶20. Larry's attorney was deficient in failing to request the circumstantial-evidence instruction that would have increased the burden of proof on the State. However, we find that Larry has not met his burden to demonstrate that this deficiency prejudiced his defense so that "the result of the proceeding would have been different." The jury was presented with significant evidence of Larry's guilt, including his possession of the stolen property almost immediately after the burglary occurred, his inconsistent stories of where the items came from, and his familiarity with Williams's house. This issue is without merit.

**CONCLUSION**

¶21. Larry's arguments on appeal are without merit. We affirm his conviction and sentence.

¶22. **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**

10