# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01436-COA

JAMAR ALLEN                                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/09/2019 |
| TRIAL JUDGE: | HON. JOHN R. WHITE |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA AINSWORTH ASHLEY SULSER |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/26/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Jamar Allen was convicted of two counts of aggravated assault, one count of shooting into a dwelling, and one count of being a felon in possession of a firearm. The Alcorn County Circuit Court sentenced Allen to serve two consecutive twenty-year terms in the custody of the Mississippi Department of Corrections for the aggravated assault convictions. For the remaining convictions, the court sentenced Allen to serve two consecutive ten-year terms, with ten years suspended for each term, and five years of post-release supervision. The sentences for the last two convictions were set to run consecutively with the sentences

for the aggravated assaults. Allen filed a motion for judgment notwithstanding the verdict or a new trial, which the court denied. Allen appealed.

¶2. Allen raises two issues on appeal: (1) the prosecutor's remarks during closing arguments warrant reversal; and (2) his counsel was ineffective for failing to request a circumstantial-evidence jury instruction. Finding no reversible error, we affirm Allen's convictions and sentences.

## FACTS

¶3. Allen moved in with his girlfriend, Charity Payne, in late January 2017. On February 12, 2017, Payne ended her relationship with Allen after he became aggressive and threatened to "shoot the place up" if he caught other men around her. That same day, Payne asked her ex-boyfriend Larry Hope to stay at her house because she needed protection from Allen. Allen returned to Payne's house around 8 p.m. to retrieve his clothes. When he arrived, he saw Hope there, and a fight ensued between the two men. The fight ended with Allen and Hope shaking hands and Allen leaving without his clothes.

¶4. Around 3 a.m. the next morning, Allen returned to Payne's house and knocked on the door, demanding his clothes. Payne looked out the window and saw Allen. Payne gathered Allen's clothes in a black garbage bag, opened the door, and threw the bag out. She made eye contact with Allen before she closed the door. Hope also saw Allen's face. When Payne closed the door, she heard eight or nine gunshots from outside. Payne was struck in the chest, and Hope was struck in the back.

¶5. Hope called 911. When the officers arrived, Payne stated that Allen had shot them.

2

Notably, neither Payne nor Hope saw Allen with a gun. A private security guard also arrived at the scene after hearing the gunshots. He stated that around 2 a.m. he saw a man standing outside of Payne's house "looking suspicious." Investigators recovered eight spent shell casings from the crime scene but did not find a gun. They also documented the bullet holes in Payne's house.

¶6.     While Sergeant Ken Walker was inspecting Payne's backyard, he saw a small black Nissan or Toyota with its engine running. He watched as the vehicle drove away without its headlights on. As the vehicle braked, Sergeant Walker noticed the driver's side taillight did not work. When Captain Ben Moore arrived, Sergeant Walker told him about the suspicious vehicle. A few weeks before, Captain Moore had pulled over a similar vehicle with a broken taillight. During that traffic stop, Captain Moore arrested the driver, Allen, because there was a warrant out for his arrest in Wisconsin, but then Captain Moore released Allen.[1]

¶7.     Captain Moore contacted Detective Jerry Rogers to help locate Allen. Detective Rogers located the vehicle from Captain Moore's traffic stop and issued a "be on the lookout" notice for Allen. Allen was eventually located in custody in Milwaukee, Wisconsin. No weapon was ever recovered.

**ANALYSIS**

**1.     Prosecutorial Misconduct**

¶8.     After Allen's arrest and transport back to Mississippi, a trial commenced on July 30,

---

[1] The warrant was for Allen's probation violation from a theft conviction. The record is silent as to why Allen was released after the arrest. Allen's arrest was not revealed to the jury at trial. The jury only heard that Captain Moore stopped Allen for a broken taillight and that the stop was long enough for him to accurately identify Allen.

3

2019. A jury convicted Allen of two counts of aggravated assault, one count of shooting into a dwelling, and one count of being a felon in possession of a firearm. Allen first argues that the State committed prosecutorial misconduct during its closing argument when it "asked the jury to consider Allen's travel to Wisconsin as inculpatory evidence of flight." Specifically, the State said, "There's no gun because [Allen] ran off back to Wisconsin, that's why there's no gun." Allen's attorney immediately objected and requested a mistrial, which the court overruled and denied.

¶9. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Jackson v. State*, 174 So. 3d 232, 236 (¶9) (Miss. 2015). "Even when a prosecutor has made an impermissible comment, this Court requires a showing of prejudice to warrant reversal." *Outerbridge v. State*, 947 So. 2d 279, 286 (¶23) (Miss. 2006).

¶10. At the outset, we acknowledge that the State's comment is not evidence of flight. The prosecutor did not state that Allen traveled to Wisconsin because he was guilty or fled Mississippi because he was guilty. Rather, he suggested that no weapon was recovered because Allen presumably took it with him to Wisconsin. After review, we cannot say that any of the prosecutor's actions in this case "create[d] unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Jackson*, 174 So. 3d at 236 (¶9).

4

¶11. Even if the State had committed prosecutorial misconduct with this statement, the error would be harmless based on the overwhelming evidence of guilt. *See, e.g.*, *Harris v. State*, 37 So. 3d 1237, 1247 (¶38) (Miss. Ct. App. 2010) (holding that "[t]he strength of the State's evidence against Harris was such that if the improper comments by both prosecutors were removed, we are convinced beyond a reasonable doubt, that the jury would have reached the same verdict based on the evidence presented at trial"). Payne testified that Allen threatened to "shoot the place up" if he caught her with other men. The first time Allen returned to Payne's house to get his clothes, he and Hope got into a fight. Later that same night, the second time Allen came to get his clothes, Payne opened the door and threw out his clothes. Both Payne and Hope saw Allen before Payne closed the door. Immediately after Payne closed the door, Payne and Hope were struck by projectiles. Finally, the suspicious vehicle found leaving the scene was confirmed to be the same vehicle driven by Allen in a previous traffic stop. Accordingly, even if the prosecutor's statement was an improper comment, we find any error harmless due to the overwhelming evidence of guilt produced by the State.

### 2. Ineffective Assistance of Counsel

¶12. Allen also argues that his attorney was ineffective for failing to request a circumstantial-evidence instruction. "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)). Such claims will be addressed on direct appeal when "[(1)] the record affirmatively

5

shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* Additionally, such claims may be resolved "on direct appeal when the record affirmatively shows those claims are without merit." *Id.* After review, we find the record before us is sufficient to decide Allen's claim because Allen could not show any alleged "deficient performance" that prejudiced his defense.

¶13. To prove his counsel's assistance was ineffective, Allen must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. A strong but rebuttable presumption exists that counsel's performance was effective. *Gilley v. State*, 748 So. 2d 123, 129 (¶20) (Miss. 1999). First, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Quinn v. State*, 191 So. 3d 1227, 1234 (¶27) (Miss. 2016). Second, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gilley*, 748 So. 2d at 129 (¶20) (quoting *Strickland*, 466 U.S. at 694). If the defendant cannot satisfy both *Strickland* prongs, his claim fails. *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶14. As for the first prong, the question is whether Allen's attorney was deficient for failing to request a circumstantial-evidence instruction. "A circumstantial-evidence

6

instruction provides that the State must prove the defendant guilty beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence." *McInnis v. State*, 61 So. 3d 872, 875-76 (¶11) (Miss. 2011) (emphasis omitted). "Where the State 'is without a confession and wholly without eyewitness testimony to the gravamen of the offense charged . . . ,'" the defendant is entitled to a circumstantial-evidence instruction. *Burleson v. State*, 166 So. 3d 499, 509 (¶29) (Miss. 2015). A long line of cases hold that it is incumbent on the defendant to request a circumstantial-evidence instruction. *See Briggs v. State*, 225 So. 3d 1253, 1255 (¶7) (Miss. Ct. App. 2016); *Turner v. State*, 945 So. 2d 992, 999 (¶23) (Miss. Ct. App. 2007); *Savage v. State*, 764 So. 2d 445, 448 (¶9) (Miss. Ct. App. 2000); *Poole v. State*, 231 Miss. 1, 94 So. 2d 239, 240 (1957). Failure to do so constitutes a waiver, and a trial judge is not required to sua sponte give a circumstantial-evidence instruction. *See Turner*, 945 So. 2d at 999 (¶23).

¶15. There is a presumption that decisions made by defense counsel are strategic, and this Court "will not second-guess counsel's decisions that fairly may be characterized as strategic." *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015). Furthermore, "[h]aving a trial strategy negates an ineffective assistance of counsel claim, regardless of counsel's insufficiencies." *Hall v. State*, 735 So. 2d 1124, 1127 (¶10) (Miss. Ct. App. 1999). Our supreme court has held that "[w]hether to request a certain instruction generally is a matter of trial strategy." *McCoy v. State*, 147 So. 3d 333, 347 (¶36) (Miss. 2014) (citing *Havard v. State*, 928 So. 2d 771, 790-91 (Miss. 2006)). However, this Court has held that "[f]ailure to request a circumstantial evidence instruction, when the evidence against one's

7

client is wholly circumstantial falls below the standard of reasonable professional assistance." *Turner v. State*, 945 So. 2d 992, 1002 (¶33) (Miss. Ct. App. 2007); *see also McCray v. State*, 263 So. 3d 1021, 1027 (¶17) (Miss. Ct. App. 2018); *accord Larry v. State*, 200 So. 3d 453, 460 (¶20) (Miss. Ct. App. 2016).[2] Be that as it may, considering the unique circumstances of this case, we cannot say that Allen's attorney was deficient. But that is of little importance when we consider the second prong of the required test.

¶16. Due to the facts of this case, there is no doubt that Allen's claim fails because he cannot satisfy, based on the record of his trial, the second *Strickland* prong. That prong requires us to determine whether there is a reasonable probability that the outcome at trial would have been different had Allen's attorney requested a circumstantial-evidence instruction. *See Gilley*, 748 So. 2d at 129 (¶20). Given the vast amount of evidence presented at trial, we can confidently say it would not have changed the result. As previously discussed, Allen had threatened to "shoot the place up" if he caught Payne with other men. He became violent the first time he returned and tried to get his clothes. Both Payne and Hope saw Allen the second time he returned, right before Payne shut the door. No one else was outside. As soon as Payne shut the door, she and Hope were shot through the door where Allen was standing. Additionally, the suspicious vehicle leaving the crime scene matched the vehicle driven by Allen a few weeks prior. In considering the overwhelming evidence of guilt, there is simply no proof of prejudice caused by the attorney's alleged deficiency nor any indication that the outcome would have been different if a circumstantial-

---

[2] The Mississippi Supreme Court denied certiorari in *McCray v. State*, 263 So. 3d 665 (Miss. 2019). No petition for writ of certiorari was filed in *Turner v. State* or *Larry v. State*.

8

evidence instruction had been given. Accordingly, we find his claim for ineffective assistance of counsel is without merit.

## CONCLUSION

¶17. We find no reversible error based on the State's remarks during closing argument. Further, we find that Allen has failed to prove his claim for ineffective assistance of counsel because he cannot satisfy both prongs of the *Strickland* test. Therefore, we affirm Allen's convictions and sentences.

¶18. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE AND McCARTY, JJ., CONCUR. BARNES, C.J., WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**